The next case on our call is Agenda No. 2, No. 128366, People of the State of Illinois v. Frank Roland. Counsel for the appellant, are you prepared to proceed? Good morning. I may please the court and counsel. I am Assistant Attorney General Eldad Malamuth on behalf of the People of the State of Illinois. This Court should reverse, because Petitioner failed to make a substantial showing that his counsel provided ineffective assistance by not presenting additional evidence of Petitioner's suicide attempts approximately two months, and then a week after, he shot at Officer Rewers. Now, Petitioner's failure extends to both Strickland prongs, deficient performance and prejudice, but the simplest way to dispense with this case is through the second prong, net prejudice. And that is because Petitioner has not made a showing that there's a reasonable probability of a different outcome at his attempt murder trial had counsel presented the evidence. And the reason we know this is simple. This was a bench trial. And after the bench trial, the judge explained that she didn't believe Petitioner because his account, in the judge's words, doesn't make any sense. The court explained that if Petitioner had wanted to commit suicide by officer gunfire, he would have wanted to guarantee that all the officers were shooting at him. He wouldn't be fleeing and then running around the archway. In other words, doing what he could to avoid being shot. So that the additional evidence of Petitioner's state of mind two months before or after the incident, there's no reasonable outcome that such testimony would have made a difference, would have resulted in an acquittal, because the salient issue was Petitioner's conduct on the day of the shooting. Now, just to review that conduct briefly, not to belabor the fact too much, but Petitioner did not intend for the confrontation with police to occur. He then fled when the confrontation began, and then he did everything he could. He then hid and avoided doing everything he could to avoid being shot. So Petitioner's account is that he did nothing to start the confrontation. The officer's account is that they responded to a call at that time, at approximately 7.30 p.m. that night, and the call claimed that this individual had threatened a young child with a firearm. Counsel, I have a question. Wasn't the only, if not the main evidence in this case, the conflicting testimony between what the officer said and what the defendant said? Well, Your Honor, there's, it really isn't a conflict between the testimony, insofar as they... Well, let me rephrase it. The substance of the testimony. The defendant claimed he shot up into the air, and the officer claimed he shot, he pointed the gun at him. That's, I think that's a clear conflict, yes or no? Well, it's not, it's not a credibility contest in the sense that, first of all... Why not? The defendant, Petitioner's testimony isn't that he shot right in the air. It's that he shot at an angle. He was sort of turning around, and he shot slightly at an angle. But his testimony is not that he pointed the gun at the officer. Isn't that correct? Yes, that he shot up at an angle. That's correct. And the officer's testimony is that he pointed the gun at him, at himself, the officer. Yes. So that seems like a conflict to me. Well, the main conflict is the main credibility issue in this case, Your Honor. The only credibility issue is whether the trial judge was going to believe Petitioner's account that he wasn't, that he was attempting to commit suicide. Well, let me ask another question. Would evidence of his, his suicidal tendencies and what had happened before bolster or give any credibility to his theory? Well, there's certainly no reasonable, there's no reasonable likelihood that it would have made a difference. How do you know that? Well, we know because the judge's comments wasn't, there was no skepticism regarding whether Petitioner was suicidal two months before. And there's no, there was no skepticism about whether Petitioner had attempted suicide after his arrest. The only issue was whether his conduct that day was in any way consistent with committing, with an attempt to commit suicide. And again, so the officer, by the officer's account, they had sought out Petitioner or someone who fit his description, but he wasn't there at the time. In fact, they looked for about half an hour, they couldn't find him, and they came back and every hour, but he still didn't appear for three hours, three and a half hours after the incident. Then he fled, he runs away, doesn't wait for officer gunfire. Then when he turns around and fires the shot, he simply, he doesn't wait for them to fire back, he keeps running. There's one gunshot that the officer fires while he is either on the ground or has left, is leaping to the ground. It is nowhere near Petitioner. But again, Petitioner doesn't wait. He runs and he hides in his friend's apartment. Then when the officers track him down to that apartment, he appears with his shirt off, with his hands up. In other words, being as clear as he could possibly be that he wasn't armed, and thus the officers wouldn't shoot him. So there's simply nothing about his conduct that suggests an attempt to commit suicide. And moreover, attempting to commit suicide is not inconsistent with an attempt to, with the specific intent to kill Officer Rewers. Remember, there are three officers on the scene chasing him. In fact, the, perhaps one of the most efficient ways to ensure that he would receive gunfire is to shoot and even mortally wound one of the officers. That would perhaps ensure that the other two officers would return gunfire and try to kill him. But that's not what he did. And Petitioner. And counsel, so in this instance, there was testimony by defendants that the officer was not aware of his suicidal tendencies. Is that correct? That is correct, Your Honor. And that was not disputed by the State. That's exactly right. It was unchallenged. That not only was Petitioner not cross-examined about these suicide attempts, but the prosecution did not bring up the sincerity of these suicide attempts in its closing argument. So there was no challenge to Petitioner's suicide attempts two months before and then after his arrest. So the idea that cumulative evidence regarding these unchallenged, Petitioner's unchallenged testimony would have affected the outcome is simply not there. And this also goes to the other prong, deficient performance. So counsel was made a reasonable strategic decision in not bringing out additional testimony regarding these, the suicide attempts, for the reason Your Honor mentioned, that the suicide attempts were unchallenged. Moreover, the evidence, the testimony had potential downsides. So in the records that Petitioner provided in his petition or attached to his petition, it shows that they could have highlighted negative aspects of Petitioner's character. So for instance, the documentation regarding his hospitalization prior to the arrest listed is aggressive behavior, increased aggressiveness. And those records discuss that he had an altercation with his girlfriend and had to be maced and handcuffed by the officers. So faced with the situation in which the testimony regarding the suicide attempts was unchallenged, counsel could reasonably have determined that bringing up these other documents or other testimony which could have highlighted negative aspects was not strategically sound. And the same goes for the documentation afterwards, that they showed, they discussed Petitioner's stressors, including his gang affiliation. There was a statement that he was simply seeking to avoid being returned to a specific part of the jail. So there was, it could have suggested that he was malingering. So there were sound reasons for the, for counsel not to, not to provide further evidence of these. Counsel, this was a bench trial, right? Correct. So just as there's sound reasons for not providing it, since this was a bench trial, what were the real downsides to providing that record to the judge? The record, the evidence of his suicidal behavior in the past and all of the other things that were provided to the court, and also the attendant medical records that supported that? Well, again, Your Honor, first it could have brought up these negative aspects about Petitioner. It could have highlighted his, his gang affiliation, but also could have actually brought into question the sincerity of his, of his suicide attempts. So at sentencing, some of the documentation was provided to the court, and it's only then, four months after the guilty verdict, and it's only after more evidence is presented of the suicide attempt that there's any suggestion that the attempts were not sincere. Another reason, another potential downside, is that it could have eclipsed the alternative basis for acquittal. So it could have convinced the court that the only, the only possible way to find a defendant, find Petitioner not guilty of attempted murder was to find that he was attempting to commit suicide. But there was an alternate basis, one that, in fact, fit with the facts, and that is that Petitioner was simply trying to flee and escape and fired a warning shot, and wasn't trying to kill the officer, but was simply trying to facilitate his escape to delay the officer's, which, in fact, happened. And while Petitioner has suggested that counsel did not pursue this line, that is not the case. Counsel pursued it throughout the proceedings. Counsel, he, he suggested this, he argued it during an opening argument, that the Petitioner fired without any sort of precision while running away. He returned to this argument in his motion for a directed verdict, specifically saying it was more of a get away from me or a warning shot. And in closing, to be sure, he suggested that the court should credit Petitioner's testimony, but he also stated that Petitioner shot while looking in the direction that he is running, and perhaps shot without even looking up. So he continued with this alternate argument throughout the proceedings, and that could have been a downside of focusing the court's attention even more on this, the veracity or the sincerity of these suicide attempts. We also can see that Petitioner has not overcome the presumption of a reasonable investigation in this case. Counsel worked with Forensic Clinical Services to obtain documentation regarding Petitioner's mental health history. Counsel had brought the mental health to the attention of the court and secured a fitness hearing. Counsel continued to seek additional evidence, additional documentation regarding the suicide attempts, and indeed the death of Petitioner. Ginsburg. But, Counsel, if all of that is true, during the crucial part of the whole proceeding, which was the trial, Counsel didn't present all of this evidence that you're now talking about. Isn't that right? Well, that is right, Your Honor. And the presumption is that we presume that Counsel's conduct fell within the broad range of reasonable assistance, that it was a strategic decision. And for the reasons discussed today, it was. There were possible downsides to presenting the additional testimony. The testimony regarding the suicide attempts was unchallenged, so it wouldn't have provided necessarily any additional benefit. And it would have eclipsed the alternate basis for acquittal. So it's totally true that Counsel didn't provide that, didn't present such testimony. But that doesn't demonstrate deficient performance. And it also doesn't demonstrate prejudice, because again, there's just no reasonable basis to believe that such testimony would have impacted the outcome when it was a bench trial and the trial judge, on the record, stated the reasons for her ruling, her finding of guilty, and had nothing to do with whether Petitioner had committed suicide or attempted to commit suicide months before or after, but only had to do with his conduct on that day. So unless the Court has any other questions, we would ask this Court to reverse the judgment of the appellate court. Thank you very much. Answer? Good morning, Your Honors and Counsel. My name is Gilbert Lenz from the Office of the State Appellate Defender, and I'm here on behalf of Frank Rowland. Your Honors, the only question at this bench trial was what direction Frank Rowland was pointing the gun in the air. And I'm here to ask a question about the credibility contest between the officer and Mr. Rowland. Crucial to Rowland's credibility as to his testimony of his pointing the gun in the air, was his testimony explaining why he was doing that? We know that was a crucial question, because some of the first words in the State's closing argument were that Rowland's testimony about why he was doing it was not credible, and some of the first words in the judge's findings of guilt were a little bit different, and some of the first words were that Rowland was not credible in his testimony about why he was doing what he was doing. That is, that he was not genuinely suicidal. Could you help me a little bit? So this evidence about his mental health, it's not, you're saying that it was not relevant to his intent? It was rather to corroborate his credibility? It was to corroborate his credibility as to both elements of this offense, the act of strays and the mental state. His testimony was that his act was to fire in the air, which would not be sufficient for an attempted murder as it would be a substantial step, and he testified that he did not intend to kill the officer, which is speaking to the mental state. His mental health history is to corroborate his testimony on both of those points, because the witnesses who could have testified about his July incident and his incident in the jail a few days after this, that testimony, just from the records we have in his post-conviction pleadings, that testimony would have showed that his conduct on the day of this incident was consistent with his conduct in this short three-month period where he was experiencing, as his witnesses would have testified, genuine suicidal ideations and exhibiting genuine suicidal behavior. Did he testify to that, your client? He testified to... His suicidal ideations. He did. So counsel, so after Rowland chose to testify, counsel chose to elicit from him the testimony I just described about the day of the incident, what he did and what his intent was, knowing that Rowland's credibility on that explanation might lead to the perceived inconsistency that the state emphasized at the trial and the state emphasizes here today between his conduct and his suicidal, counsel elicited briefly some testimony about these two incidents. Did not even nail down when this prior incident occurred. According to the trial evidence, it could have been ten years earlier. It would have been... Counsel did not even make sure that the judge knew this was only two months prior to this incident. So counsel did elicit the testimony, and did the state contest that or question the credibility of your testimony? He did not examine his testimony about the specific incidents, but they absolutely contested his credibility on that testimony because some of the first words out of the prosecutor's mouth in closing argument were his story... She, I believe it was her. I'm sorry. But the prosecutor said the word ridiculous, I think, five times in the closing argument. Ridiculous that he would have been running away while also being supposedly genuinely suicidal. The state's argument here... The credibility of your client's testimony regarding the past incidents of suicidal ideations, what the state did challenge was his representation or his position that I was trying to have the officers kill me. Correct. Correct. And that's... And then counsel... And part of the reason the state, I think, felt free to call that testimony ridiculous in this case was his counsel's failure to offer some corroboration of his testimony that he was actually experiencing suicidal ideations and exhibiting suicidal conduct in this short three-month period. It's important. I'll point to this court's case in Harris where the judge... The reason we know that this question was crucial because the judge indicated that Roland's... The reason Roland was not credible as to what he was doing that day was that she did not believe he was genuinely suicidal. Well, that indicates that the absence of this evidence that counsel either knew about or should have known about was crucial to the judge's findings. And under that standard, at minimum here, we have a substantial showing of a reasonable probability of a different outcome that warrants an additional hearing. And the evidence that the state described in its briefs and before the court today are simply open questions of fact that are raised by the pleadings in the record that can only be resolved at a third-stage hearing. What would our standard of view be about this decision by the trial? Let's say the evidence was out there and the judge found it wasn't relevant. That's kind of what we're talking about. Is this evidence really relevant to the issue in this trial? How do we analyze that? Well, the first thing I would say, Your Honor, is that the judge did find it was relevant. The state actually objected to the testimony about the other suicide attempts initially, and the judge overruled that. The defendant's testimony about it? Yes. Yes, yes. So I think the judge found that testimony about his other suicide attempts before and after the incident was relevant to his testimony. I think it follows from that that if there were witnesses who would have been able to tell the judge that Roland's conduct was seriously suicidal, in contrast to the state's argument that it was severe behavior, that it was genuine, that there was a description of his injuries from the nurse, lacerations to his neck, gingival, blood on the floor in his jail cell a few days after the incident, this all would have been consistent with his conduct on the day of the incident. One point I want to make is that the state's argument seems to be that this court should find, as a matter of fact, that Roland's behavior was consistent with his behavior two months earlier, in a few days after the incident. I think it's a matter of law that someone who flees from the police is, as a matter of law, inconsistent with wanting to commit suicide by police. But this is not consistent with what we know about suicidal behavior. We know that the evidence in this case that could have been offered would have showed that his behavior on the day of the incident was actually consistent with his behavior two months earlier and a few days after, where you have someone who's experiencing genuine suicidal ideations, exhibiting severe suicidal behavior, acting on those ideations, but, like many people in that same situation, is not 100% fully committed, has doubts, hesitations, and we see in too many cases, of course, that people in that situation often decide to have someone else try to do the job for them. But the point here is that it's not inconsistent. It's not so inconsistent, as a matter of law, that this court should say that he has no possible claim here, especially when we know that this exact question was crucial to the judge's findings and guilt. We know this could have made a difference at this trial, and if this court agrees with that, then I think that answers the first pronged question as well, because if this court agrees that the evidence in these records is enough to raise, at least at minimum, to raise a substantial showing of a reasonable probability of a different outcome, then counsel either didn't know about these witnesses, didn't know about these records, and thus failed to present them, left his client's testimony entirely uncorroborated on this crucial point that's at least a substantial showing of unreasonable performance. Absolutely not, Your Honor. The reason they're not cumulative is because, A, corroboration of a defendant's testimony may be necessary in some cases, and it can be effective in other cases, and B, this testimony would have offered more to the trier fact than what Rowland could say about his own conduct and behavior, because these are, at least in two of the witnesses' cases, or expert witnesses who actually expressed opinions in the records about his conduct, they described his suicidal conduct as sincere or severe, and B, this testimony would have offered more to the trier fact than what Rowland could say about his own conduct, and C, having an expert testify to a judge about these two incidents being serious would have put Mr. Rowland's testimony in a much different light. It would not have allowed the State to simply wave off his testimony as ridiculous five times. It would not have allowed the judge to kind of summarily say this testimony is incredible on its face, because there's no way he could have been actually suicidal. That was the key fact here, and counsel left that testimony entirely uncorroborated. Ginsburg. How about the State's argument that there is some material in these documents that would, in fact, undercut the defendant's argument? Well, the State would certainly, if counsel had presented this evidence that was necessary to corroborate Mr. Rowland's testimony, the State could have presented counter-evidence, but as I believe as Justice Cunningham said earlier, there is absolutely no downside to presenting this evidence. This door was wide open that the State, capitalizing on counsel's failure to present more detailed testimony, failure to present other witnesses about this, the State used that to dismiss, to wave away Rowland's testimony, and the judge did as well. This door, the door about Rowland's credibility as to being genuinely suicidal was wide open at this trial. There was absolutely no downside to presenting this evidence, and the State may have presented admissible counter-evidence. We don't know what it would have been, but to say, you know, counsel's goal here is only chance of getting an acquittal or conviction of a lesser offense, was to convince the trial court to find some reasonable doubt about Mr. Rowland's testimony. What direction Rowland was pointing that gun, and his explanation for why he was doing that was crucial to that question. Counsel would be accurate to say that your position is that good trial strategy does not exclude exculpatory evidence, possible exculpatory evidence? Absolutely, Your Honor. If counsel, I believe the State's position here is that counsel did have these records, was aware of these witnesses, if counsel was aware of these witnesses, then at least certainly, I mean, we might have a full Strickland claim here on that, but at the pleading stage, at the second stage, he's at least raised a substantial showing that counsel either never knew about these witnesses, which would be deficient, or did know about them and failed to present them in a case where there were no downsides to doing so. And it was absolutely required as the State's argument and the judge's findings show. One last point, Your Honor, the State is saying that it was important that one of the downsides was that counsel offered alternative theories. And that's just simply not the case here. The State cites counsel's opening statement. This was, of course, before Rowland had decided whether he was going to testify. Counsel may have been well aware that Rowland was going to testify, or may have been well aware of what Rowland would say if he was going to testify, but it certainly may have been an open question about whether Rowland would testify at all. And as this Court well knows, defense lawyers don't float things in opening statements that they're not going to support later. So the opening statement, I think, is irrelevant. Motion for direct verdict, same thing. That was based on the State's evidence, trying to raise a reasonable doubt as to what the State presented before Rowland testified. But once Rowland decided to testify, counsel adopted the strategy of eliciting testimony, not only that he fired in the air, but why he did so, that he was suicidal that day. Counsel fully adopted that in his closing argument. There was no alternative theory in his closing argument. The argument after Rowland testified was that he was suicidal that day, and that's why he fired in the air. At that point, a fully prepared lawyer should have presented this corroborating evidence, because we know, again, from what happened right afterwards, that was crucial to this case. Counsel, I have a question regarding the dissent in the appellate court. And I'd like you to address how, you know, let's say that all of the evidence presented in those records, the mental health records came in, that they would establish that he had been suicidal. How do we get over the fact that, you know, still the shooting itself, whether it was in the air or directly at the officer, you know, created a great likelihood that, you know, death could occur, serious injury could occur. How do we get over the fact that, you know, are we talking about, you know, you know, the elements and, you know, this creating this likelihood that whether or not he was suicidal, that he would have understood the likelihood of what he was doing? You know, I think they, you know, said you can't put a diminished capacity argument into reasonable doubt or something. How do you address that? The dissenting justice opinion below? Well, I think as the state's briefs reveal in this court, the issue of diminished capacity is not in front of this court at all. There's no, this case is about someone who was, so as this court well knows, the definition of legal insanity is very high. Someone can be severely mentally ill but still be legally sane, that is, still have the capability of forming a criminal intent. So there's no question here that that's not at issue. Rowland's testimony, no matter how troubled he was at that time in his life, there's no question that he was able to form intent, that he knew what he was doing every step of the way. So I think the dissenting justice below simply got that wrong and the state does not adopt that theory here. Well, Greg, my question is, even if he was trying to commit suicide, even if, you know, I don't want to kill anybody, but when he shoots that gun, isn't he, you know, creating a great likelihood that his action would result in someone's death? I mean, you know, is that implausible or how would that be refuted by these records? Well, his testimony, so first of all, his testimony, so if the only evidence was that he fired the gun directly at the officer, then I think Your Honor is correct. There would be more difficult to show how these mental health records were relevant. But the testimony here, to the state's point about how shooting, being suicidal and is not necessarily inconsistent with wanting to kill the officer, well, Rowland testified that he shot into the air. So that, I think that alone would raise a reasonable doubt for a trier fact as to the substantial step for attempted murder. Rowland explained that he, and for, of course, intent to kill, that he did not intend to kill the officer. So the reason the mental health records would have been relevant and would have been crucial in this case is because those witnesses would have testified that Rowland's conduct during this time in his life, both before and after this incident, was consistent with what he testified to doing that day, which is to be suicidal, take actions on those ideations, but he had hesitations, he had doubts, he wasn't 100% committed to this. And as, yeah. Can I ask you this last question before you're like, what do we do with the evidence that instead of standing there and waiting for the officer to shoot him, he ran, he hid, he tried to get away from the police as much as possible, how does that fit in to his state of mind and to his intent and to his credibility? Well, it allowed, it has an appeal intuitively that it's inconsistent with someone who's genuinely suicidal. But we know from the science, we know from these other witnesses, more importantly, we know from the other witnesses who could have testified that his conduct at this point in his life was actually similar, is consistent with what he did on that day, which is to take actions on the suicidal ideation. And then he changed his mind. Changed his mind, we cite the study, I think it's well known at this point that many people who have committed suicide, people who have suicidal ideations do not follow through, they try, they fail, they try, they abort, they don't try at all perhaps. So the key here is at this point, this court should not be saying as a matter of law that his behavior on that day was so inconsistent with someone who was genuinely suicidal that this claim should not advance to a third stage hearing, where all of the unresolved questions that the record and the pleadings and the state's briefs raise, can be resolved, and really that's the only place where they may be resolved. So if there are no further questions, Mr. Rowland, I respectfully request that this court affirm the appellate court's decision, and remand for a third stage hearing where these questions may finally be answered. Thank you very much, counsel. Counsel, the state and rebuttal. Good morning again, your honors. I'd like to raise three quick points in rebuttal. First, the petitioner asserts that the critical issue was what direction the gun was pointing. Now with respect to this, counsel actually provided better evidence than the petitioner, than the corroborating petitioner's unchallenged testimony regarding his suicide attempts. Counsel provided not only petitioner's testimony that he fired at an angle up into the air, he also elicited through aggressive cross-examination testimony from the prosecution's witnesses. So he elicited testimony from one officer that petitioner fired while running, only half-turned, and that it was dark. So it would be difficult both for the officer to see exactly where the gun was pointing, and for petitioner to aim the gun. Counsel elicited testimony from another officer that she would have seen the gun point exactly where the gun was pointing, she would have seen the muzzle, the firing, the muzzle fire, even if petitioner had been firing up into the air. And counsel elicited testimony from the forensic investigator that there was no recovery of the bullet, even though they did a thorough search of the area, but they didn't search the rooftop where the bullet might have gone, if petitioner had fired into the air. So counsel did an admirable job of... Counsel, quick question. All that being said, wouldn't then the records of his suicidal behavior in the recent past have supported his argument? Well, no, not necessarily, Your Honor. And again, this goes to the standards of deficient performance. We don't have to be standard, reverse how we look at these sorts of issues. We start from the presumption regarding deficient performance that counsel's conduct was reasonable, that counsel's conduct fell within the wide range of potential reasonable assistance, and that decisions that were made were done so for a sound strategic reason. And here, there's significant potential downside that we saw. To be sure, counsel could have concluded that it was worth the downside, but counsel could reasonably have determined that because this testimony was unchallenged, that the downsides could outweigh the potential upsides. As again, the fact that petitioner committed suicide was unchallenged, and could have revealed all sorts of negative aspects and inconsistencies with defendant's account. For instance, that defendant, his story was that he had simply purchased a gun that day. Well, if it turns out that there's more evidence regarding petitioner's gang affiliation, that could have undermined that he only purchased the gun that day. So there was... Aren't those the things that we should be determining at the third stage, whether or not, because we're speculating at this point about, you know, what was contained in all those and why counsel decided to do what he did? No, Your Honor, because we start from the presumption that counsel's performance was reasonable. Now, petitioner has to make a substantial showing that that's not the case. And so if there are downsides, if to the course that now, in hindsight, petitioner wants, you know, wishes counsel had pursued or claims that counsel should have pursued, that is not enough to overcome the presumption. We don't just automatically jump to a third stage proceeding any time there's any question as to counsel's conduct. We start from that presumption, and we go from there. And petitioner has to make a substantial showing, and can't do so, hasn't done so, has not met his burden when there are various reasons why pursuing this one course of action was not the only way that counsel could perceive reasonably. And... I moved to the, when you mentioned the standard, I was just looking at the standard when you mentioned it, so I wanted to go back and kind of quote from it. We're talking at this point about the first piece about counsel's performance. And so there's a presumption that it's appropriate, but then the second piece is that we have to decide whether or not it fell below that objective standard. The second prejudicial piece is usually described as meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. So how, what are you suggesting here? How do we make a decision whether there's a reasonable probability that if these materials had been introduced, that their, the result would not have been different? Or actually, that's not the standard, but how would you respond to this argument that if they had been introduced, the result would have been different? Well, the best way in this case, Your Honor, to start is with, we have the benefit that it was a bench trial, and it was, we have on the record the trier facts reasoning. And so we can look to the trier facts reasoning in this case. Did it have anything to do with Petitioner's suicide attempt to commit suicide? Two months before? No. Did it have anything to do with the potential afterwards? No. What it had to do with, the salient facts were those that occurred that day. And so there's no reasonable probability that it would have changed the fact finder's mind that his account simply doesn't make any sense. We know how the fact finder reasoned in this case, and some issue that is completely irrelevant or doesn't make any sense, we can look to the trier facts reasoning in this case. And we can go further than that, because, again, we know the key issue that Petitioner claims would have been bolstered is that he intended to commit suicide. But intending to commit suicide isn't inconsistent with intending to kill Officer Rewards. So not only was his conduct inconsistent with attempting to commit suicide, even if the fact finder had believed that he was attempting to commit suicide, there's no reasonable probability that that would have changed the outcome, because that was not inconsistent with what the key question was, which was, was he intending to kill Officer Rewards? And so in that case, in this case, we can see that there's no, that, again, Petitioner has not met his burden of establishing a reasonable probability of a different outcome, had this evidence been presented. So unless the court has any further questions, we would ask the court to reverse the judgment of the appellate court and reaffirm the circuit court's dismissal of the post-conviction petition. Thank you, both sides, for your argument. In this case, agenda number two, number 128366, People of the State of Illinois v. Craig Roland will be taken under advisement.